**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ross R. Read,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W Colvin,<br><br>    Defendant. | No. CV-16-01104-PHX-JZB<br><br>**ORDER** |

Plaintiff Ross R. Read seeks review of the Social Security Administration Commissioner's decision denying him social security benefits under the Social Security Act. (Doc. 1; Doc 21.) For the reasons below, the Court will vacate the Commissioner's decision and remand this matter for further proceedings consistent with this Order.

## I. Background

On September 21, 2012, Plaintiff filed an application for disability insurance benefits, alleging a disability onset of May 25, 2012. (AR[1] 173-76.) Plaintiff's application was initially denied on December 11, 2012, and upon reconsideration on July 1, 2013. (*Id*. at 104-07, 112-14.) Plaintiff requested a hearing, which was held on March 27, 2014. (*Id*. at 42-79.) In a decision dated June 4, 2014, Administrative Law Judge (ALJ) Thomas Cheffins denied Plaintiff's request for benefits. (*Id*. at 26-41.) On March 17, 2016, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (*Id*. at 1-6.)

---

[1] Citations to "AR" are to the Administrative Record.

Having exhausted the administrative review process, on April 18, 2016, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint with this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1.) On September 22, 2016, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration for an award of benefits. (Doc. 21.) On November 7, 2016, Defendant filed a Response Brief in support of the Commissioner's decision. (Doc. 25.)

**II. Legal Standards**

    **a. Standard of Review**

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court reviews only those issues raised by the party

challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### b. The ALJ's Five-Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff is not disabled and is not entitled to benefits. (AR at 35.) At step one, the ALJ found that Plaintiff meets the insured status requirement of the Social Security Act through December 31, 2017, and Plaintiff has not engaged in substantial gainful activity since May 25, 2012, the alleged onset date. (*Id*. at 31.) At step two, the ALJ determined that Plaintiff has the following severe impairments: "psoriatic arthritis, left knee degenerative joint disease, status post meniscectomy in 2008 and replacement in 2013, degenerative disc disease status post fusion of the lumbar spine, and sleep apnea (20 CFR 404.1520(c))." (*Id*.) At step three, the ALJ found that Plaintiff does not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (*Id*. at 32.)

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:
> lift 20 pounds occasionally and 10 pounds frequently; stand five out of eight hours a day; sit six out of eight hours a day; frequently push or pull with the bilateral upper extremities; occasionally use foot control operations for the left lower extremity; never climb ladders, ropes, and scaffolds; occasionally stoop, crouch, kneel, crawl, and climb ramps or stairs; frequently balance; and frequently handle and finger bilaterally. [Plaintiff] must avoid concentrated exposure to extreme heat; extreme cold; excessive vibration; irritants such as fumes, odors, dust, and gases; hazardous machinery (except motor vehicles); and unprotected heights.

(*Id*.)

The ALJ determined that Plaintiff could perform his past work as a registered representative and detective. (*Id*. at 35). Given that finding, the ALJ concluded that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id*.)

### III. Analysis

Plaintiff alleges that the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's symptom testimony, and that the ALJ did not properly evaluate the

medical evidence in assessing Plaintiff's RFC. (Doc 21.) The Court addresses these arguments below.

### a. Plaintiff's Symptom Testimony

#### i. Legal Standard

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014-15 (citing *Lingenfelter*, 504 F.3d at 1035-36). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d at 1282. Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected to produce his pain." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1160-61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1). In weighing a claimant's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284; *see Orn*, 495 F.3d at 637-39. The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." *Smolen*, 80 F.3d at 1284 (citing SSR 88-13).

At this second step, the ALJ may reject a claimant's testimony regarding the severity of his or her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins*, 466 F.3d at 883), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "'The clear and convincing standard is the most demanding required in Social Security Cases.'" *Garrison*, 793 F.3d at 1015 (quoting *Moore v. Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, because there was no affirmative finding of malingering, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for concluding that Plaintiff's subjective complaints were not wholly credible.

> **ii. The ALJ failed to articulate clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.**

Plaintiff argues the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's symptom testimony. The ALJ found that Plaintiff's medical determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's "self-imposed limitations are not supported by the medical record and the record of activities of daily living." (AR 33.)

At the hearing, Plaintiff testified that his most serious health problem is pain in his lower back, left knee, hands, and left shoulder. (*Id*. at 53.) Plaintiff testified that due to pain in his knee, he is unable to stand or walk for more than 15 to 20 minutes, and due to pain in his back he can sit and concentrate for only 45 minutes at a time. (*Id*. at 53-54.)

Plaintiff also testified that he uses an ice pack on his left knee and back 75 to 80 percent of the time. (*Id.* at 55.) Plaintiff claimed that he has trouble using his hands due to soreness and swelling. (*Id.* at 59-60.) He testified to rarely leaving the house and to primarily spending the day resting in a lying down position. (*Id.* at 55-56.) He also testified that he suffers from fatigue, memory issues, staying awake during the day, and he rarely gets a full night's sleep due to his pain. (*Id.* at 61.) Additionally, Plaintiff stated he suffers from depression and anxiety. (*Id.* at 62.) Plaintiff testified that in an eight-hour work day, he would be resting six hours and collectively could sit, stand, and walk for approximately one hour. (*Id.* at 59.) He claimed he would miss half of each month due to his conditions, and he would need to take a break every hour for 15 to 20 minutes. (*Id.* at 60) Additionally, Plaintiff testified he would be off-task 80 to 90 percent of the time. (*Id.* at 61-62)

Plaintiff further testified his back pain had lessened since surgery, from a 9 to a 7.5 on a pain scale. (*Id.* at 56.) Plaintiff testified his knee pain had improved since surgery, though he still experiences pain and swelling whether he is sitting or walking. (*Id.*) Plaintiff stated his knee affects his ability to walk, and so he typically uses a cane, and he has used an electric wheelchair to attend events. (*Id.* at 57-58.) Although Plaintiff takes medication for his psoriatic arthritis, he claimed it sometimes fatigues him or makes it impossible for him to sleep, and it lowers his immune system. (*Id.* at 64.)

The ALJ rejected the symptom testimony as being inconsistent with Plaintiff's daily activities. (*Id.* at 33.) The ALJ noted that the record showed Plaintiff had reported fixing a leaky pipe in his house. (*Id.* at 322.) At the hearing, Plaintiff testified to going to events with his wife, including a football game. (*Id.* at 58.) Plaintiff also testified to mowing the lawn and hitting golf balls on two separate occasions, after receiving branch blocks for his pain. (*Id.* at 62-64.) Additionally, the ALJ found that Plaintiff's ability to take care of his own hygiene needs and pick up his laundry was inconsistent with his complaints of disabling impairments and limitations. (*Id.* at 33)

The Court finds the ALJ failed to provide clear and convincing reasons, supported

by substantial evidence in finding Plaintiff's daily activities to be inconsistent with his symptom testimony.

The Ninth Circuit Court has repeatedly asserted that the mere fact that a claimant engages in normal daily activities "does not detract in any way from [his] credibility as to [his] overall disability. One does not need to be utterly incapacitated in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Instead, the ALJ may discredit a claimant's allegation if the claimant is able to spend a *substantial* part of his day engaged in activities that are transferrable to the workplace. *Morgan v. Commissioner of the Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Here, although Plaintiff engaged in some daily activities, the evidence in the record suggests that those activities were limited and consistent with his symptom testimony. Plaintiff's daily activities consisted of taking care of his own hygiene and picking up his laundry. (AR 65.) The ALJ failed to explain how these activities are substantial and transferrable to the workplace. *See Fair,* 885 F.2d at 603 ("[M]any home activities are not easily transferrable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

Plaintiff's attendance of a football game or other events on this record is also not necessarily inconsistent with his symptom testimony. "'Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.'" *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (citation omitted). Further, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. Additionally, Plaintiff stated he needed to use an electric wheelchair while attending the football game because he was unable to walk the 200 yards from the parking lot, stand in line, and then walk to his seat. (AR 58.) This is consistent with his testimony regarding his inability to walk and stand for extended periods of time. (*Id.*)

The ALJ also cites to isolated activities while ignoring the circumstances that

surround them. For example, Plaintiff testified that on September 19, 2012, he fixed a leaky pipe for the first time in three to four years, a repair that took about 10 minutes total. (*Id*. at 68.) The following day, a report from Plaintiff's physician states Plaintiff was in a lot of pain in his lower back, knees, and hands because of Plaintiff's work on this repair, which is consistent with Plaintiff's testimony. (*Id*. at 322.) Plaintiff also testified that he hit golf balls on one occasion since his injury, an activity he had previously not done for five years (*Id*. at 62-63.) The record indicates that Plaintiff only engaged in this activity after receiving a branch block in his lower back, after which his doctor told him to do things he would normally not be able to for the six to eight hours following the procedure. (*Id*.) The next day, Plaintiff reported he was in "excruciating pain" and that he "did not want to move." (*Id*. at 63)  Similarly, Plaintiff testified that he mowed the lawn following another branch block. (*Id*.) Plaintiff also testified that his wife typically did the lawn work, because walking behind the mower was "too much" for him, and he cannot lift the basket to empty it. (*Id*. at 64) The ALJ failed to discuss any of this record evidence, and he failed to explain how these sporadic activities translate into an ability to perform regularly in the workplace.

Additionally, the ALJ rejected Plaintiff's symptom testimony as inconsistent with his medical history for the following reasons: (1) Plaintiff's psoriatic arthritis had been intermittent and his medication was effective; (2) Plaintiff's back surgery significantly improved his condition; (3) no medical source prescribed his use of a cane; (4) Plaintiff's knee replacement surgery had good results; (5) nerve conductive studies of his left hand showed no evidence of sensory motor neuropathy; (6) findings on physical examinations were minor when compared to subjective complaints; (7) Plaintiff's sleep apnea appeared to be mild; and (8) Plaintiff's kidney stones had been infrequent after the alleged onset date. (*Id*. at 33.)

The ALJ must specifically identify the testimony from a claimant the ALJ finds not to be credible and explain what evidence undermines his testimony; general assertions are not sufficient. *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1102 (9th Cir.

2014). *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (finding error where the ALJ stated only that "she found, based on unspecified claimant testimony and a summary of medical evidence," that "'the functional limitations from the claimant's impairments were less serious than she has alleged'"). Here, while the ALJ cites to the medical record, he did not sufficiently identify the specific testimony he found to not be credible, and he did not explain how the cited medical records undermine Plaintiff's testimony. Additionally, "while ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison*, 759 F.3d at 1018. The Court finds the ALJ's reasons for rejecting Plaintiff's symptom testimony are not supported by substantial evidence when viewing Plaintiff's entire medical record as a whole.

The ALJ states Plaintiff's psoriatic arthritis is intermittent and his Remicade medication has been effective. (AR 33.) The ALJ cites to two instances indicating Plaintiff's psoriasis was inactive during 2012. (*Id.* at 328, 333.) The ALJ also notes a report in September 2013 stating Plaintiff's psoriasis was doing okay. (*Id.* at 679.) While Plaintiff's psoriasis was inactive on at least two occasions and doing okay on another, as of January 27, 2014, the Arizona Rheumatology Associates described Plaintiff's psoriatic arthritis as "occurring in a persistent pattern for years" and that "the course has been increasing." (*Id.*) Aside from the two dates in 2012, Plaintiff's psoriasis appears to have been otherwise active according to his other records from Arthritis & Rheumatology Associates throughout 2012-2014, which the ALJ did not discuss. (*Id.* at 352, 386, 390, 460, 464, 681, 687, 697.) Additionally, while Plaintiff testified that Remicade had helped "immensely" in treating his condition (*id.* at 67), physician reports state Remicade does not help Plaintiff's hands. (*Id.* at 322, 361.) Plaintiff also testified that the Remicade is an IV solution that causes Plaintiff fatigue, sometimes makes it impossible for him to sleep, and lowers his immune system. (*Id.* at 64.) The ALJ does not discuss Plaintiff's testimony of these side effects, as well.

The ALJ also states that Plaintiff's back surgery significantly improved his condition, and that his knee surgery had good results. The ALJ cites to treatment notes following Plaintiff's back surgery in which it is noted Plaintiff is "doing well," and that he has done "fairly well since surgery." (AR 296-97, 509, 570.) The ALJ also cites to a report which states x-rays demonstrated "excellent positioning of lumbar spine at L4-5 with good restoration of lordosis" following Plaintiff's back surgery. (*Id*. at 559.) X-rays of the left knee showed no evidence of acute bony or hardware abnormality following his knee replacement. (*Id*. at 639.) However, healing well following Plaintiff's surgery is not necessarily related to his ability to work. *See Rodriguez*, 876 F.2d at 763 ("The ALJ's conclusion that Rodriguez was responding to treatment also does not provide a clear and convincing reason for disregarding Dr. Pettinger's opinion. No physician opined that any improvement would allow Rodriguez to return to work."). Recent reports, which the ALJ does not discuss, have shown Plaintiff still suffers from knee and back pain. (AR 640, 642, 644, 679, 683, 687.) A report from October 2013, following Plaintiff's knee replacement, states Plaintiff's back has been hurting "since his knee has gotten done." (*Id*. at 559.) A report from November 2013 states Plaintiff is "unable to perform daily tasks without significant compromise," and "weakness in extremity causes limitation in daily activity and stamina." (*Id*. at 629-30.) Plaintiff's physical therapy reports state that he has not yet met his goals in regards to his left knee, the most recent report dated January 2, 2014. (*Id*. at 668-75.)

The ALJ also states that Plaintiff's sleep apnea appears to be mild on CPAP, and his kidney stones appear to be infrequent. (AR 33.) The ALJ fails to explain how this is inconsistent with Plaintiff's alleged pain and limitations. The ALJ also cites to a record that indicates Plaintiff currently had a kidney stone, and this record does not make any statements regarding their frequency since the alleged onset date. (*Id*. at 412.)

Finally, the ALJ argues no physician prescribed Plaintiff's use of a cane, nerve conductive studies of his left hand showed no evidence of sensory motor neuropathy, and findings on physical examinations were minor when compared to subjective complaints.

(AR 33.) In making a credibility determination, the absence of fully corroborative medical evidence cannot form the sole basis for rejecting the credibility of a claimant's subjective complaints. *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings."). Because the ALJ's other reasons are not sufficiently clear, convincing, and supported by substantial evidence, this final reason alone is an insufficient basis for rejecting Plaintiff's symptom testimony.

Based on the above, the Court finds the ALJ committed harmful legal error in rejecting Plaintiff's symptom testimony without providing clear and convincing reasons supported by substantial evidence for doing so.

### b. The ALJ's Treatment of the Medical Evidence

#### i. Legal Standard

In determining a claimant's RFC, the ALJ must consider *all* relevant evidence in the record, including medical records and opinions of physicians. *Robbins,* 446 F.3d at 883. Although the ALJ is responsible for resolving any conflicts within the evidence, the reviewing court cannot affirm a decision simply by isolating a portion of supporting evidence. *Id*. at 882.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v.*

*Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original).

Here, the opinions of Plaintiff's treating physician, Dr. Sparks, are contradicted by the opinions of the state agency physicians, Dr. Disney and Dr. Schenk. Therefore, the ALJ was required to give specific and legitimate reasons supported by substantial evidence for giving Dr. Sparks' opinions little weight.

### ii. The ALJ failed to properly evaluate the medical evidence in assessing Plaintiff's RFC.

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence in assessing his RFC, and that the RFC assessment is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred by improperly isolating portions of the medical record and by failing to provide specific and legitimate reasons for rejecting Dr. Sparks' opinions. As detailed below, the Court agrees.

On April 22, 2014, Dr. Sparks, Plaintiff's treating physician, completed a Residual Functional Capacity Form. (AR 936-38.) Dr. Sparks opined that Plaintiff suffers from significant limitations. More specifically, Dr. Sparks opined Plaintiff could sit two out of eight hours a day, stand one out of eight hours a day, and walk one out of eight hours a day. (*Id*. at 936.) Additionally, Dr. Sparks opined Plaintiff must recline for four hours of an eight-hour day and would need to alternate between sitting and standing positions every 10-15 minutes. (*Id*. at 936, 938.) Further, Dr. Sparks opined Plaintiff could lift 20 pounds occasionally, and he could carry 10 pounds occasionally and 20 pounds very seldom. (*Id*. at 936.) Dr. Sparks limited Plaintiff to occasionally climbing stairs, bending,

stooping, crouching, kneeling, and crawling. (*Id.*) Dr. Sparks noted that Plaintiff was incapable of using his hands every day for to 2.5 hours, and that his left hand was incapable of repetitive gasping, push-pulling, and fine manipulations. (*Id.* at 936-37.)

Due to frequent, severe pain, Dr. Sparks opined Plaintiff suffered from "moderately severe"[2] fatigue and stress. (*Id.* at 937) She was also of the opinion such pain and fatigue would continuously interrupt Plaintiff's ability to maintain attention, concentration, persistence, and pace performing daily tasks, requiring him to take 15-20 minute breaks every 20-30 minutes. (*Id.* at 937-38.) Dr. Sparks opined Plaintiff would miss work 75 percent or more of the time due to his conditions. (*Id.* at 938.)

The ALJ gave little weight to the April 2014 assessment of Plaintiff's treating physician, Dr. Sparks, because her assessment was: (1) extreme in light of plaintiff's activities; and (2) inconsistent with medical records of her own practice and records of others' practice and objective testing. (*Id.* at 34) Instead, the ALJ gave substantial weight to the June 2013 opinion of a state agency physician, Dr. Disney, in determining Plaintiff's RFC, because the ALJ found the opinions were "generally consistent with the treatment record and record of activities of daily living." (*Id.*) The ALJ gave partial weight to the State agency assessment from December 2012, conducted by Dr. Schenk, because it was "somewhat consistent" with Plaintiff's treatment record, though Dr. Disney's assessment was given more weight because he had access to a more complete medical record. (*Id.*)

The Court finds that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for giving Dr. Sparks' opinion little weight. First, the ALJ found that Dr. Sparks' conclusions are inconsistent with Plaintiff's daily activities, including mowing the lawn, attending a football game, hitting golf balls, and fixing a leaky pipe. (*Id.* at 34.) However, as discussed above, the ALJ cites to isolated activities

---

[2] "Moderately Severe" is defined on the Form as causing "substantial limitation in the ability to perform work-related activities (can perform work functions for short durations from 5–15 minutes not totaling more than 2 to 3 hours in an 8-hour work day.)."

- 14 -

without addressing the circumstances that surround them. While looking at each activity within its context, Plaintiff engaging in these sporadic activities is not necessarily inconsistent with Dr. Sparks' opinions regarding Plaintiff's limitations.

Second, the ALJ found Dr. Sparks' opinions are inconsistent with medical records of her own practice and others' practice. (*Id*. at 34.) However, the ALJ fails to cite to or reference any of Dr. Sparks' treatment records. Dr. Sparks' records describe Plaintiff's pain as continuous, located primarily in his lower back, left knee, and hands. (*Id*. at 545-57, 640-67.) Dr. Sparks' records also state that sitting, standing, and walking aggravate Plaintiff's pain. (*Id*.) The type of pain is frequently described as aching, exhausting, nagging, tender, throbbing, sharp, and/or stabbing. (*Id*.) Objective findings in some of Dr. Sparks' treatment notes include hand and back tenderness, and analytic gait. (*Id*. at 640, 642, 646, 648, 652) The ALJ fails to explain how these records are inconsistent with Dr. Sparks' opinions.

Further, while the ALJ cites to two records from the Arizona Arthritis & Rheumatology Associations, P.C. from May 2012 and August 2012, the ALJ failed to fully evaluate these records. (*Id*. at 328, 333.) More specifically, the May 2012 record states Plaintiff's symptoms included muscle pain, joint pain, and neurological weakness. (*Id.* at 332.) While Plaintiff's psoriasis was inactive at the time, the physical exam revealed tenderness and swelling in Plaintiff's left hand, swelling in Plaintiff's right hand, as well as tenderness and Paraspinous spasm in his spine. (*Id*. at 333.) The ALJ failed to fully discuss this record. Additionally, the August 2012 record states Plaintiff's symptoms included fatigue, neck pain, neck stiffness, muscle pain, and joint pain. (*Id*. at 328.) Although Plaintiff's psoriasis was also inactive on this date, the physical exam revealed tenderness and swelling in Plaintiff's hands, tenderness in Plaintiff's right foot, as well as tenderness and Paraspinous spasm in his spine. (*Id*. at 329.) The ALJ failed to explain how these records are inconsistent with Dr. Sparks' conclusions.

The ALJ also cites to two reports from Valley Radiologists. (*Id*. at 553, 582-83.) A July 2012 report states Plaintiff's lumbar spine is normally aligned, vertebral body

heights are maintained, marrow signal is normal, and the conus is normal; however, the report also states that Plaintiff had disc degeneration, disc space narrowing, and disc degenerative bulging present. (*Id*. at 553) These back complications are what led Plaintiff to undergo a posterior lumbar decompression and fusion of L4-5 in August 2012. (*Id*. 275-80.) The ALJ fails to explain how this report is inconsistent with Dr. Sparks' conclusions.

Similarly, the ALJ cited to a September 2013 report regarding Plaintiff's knee pain, which states there is no acute osseous abnormality; however, the report notes there is mild medial joint space narrowing bilaterally. (*Id.* at 583.) Other record evidence indicates that this knee injury is what led Plaintiff to undergo a total knee arthroplasty of the left knee in October 2013, and a manipulation of the left knee under anesthesia in November 2013 (*Id*. at 579-81.) Again, the ALJ fails to explain how this cited report is inconsistent with Dr. Sparks' conclusions. Importantly, the state agency physician's opinions to which the ALJ gave substantial weight, were rendered in June 2013, before Plaintiff underwent knee surgery. (*Id*. at 91-103.) Therefore, those opinions were made without the benefit of a complete medical record.

Finally, the ALJ gave Dr. Sparks' opinions little weight because there are no medically determinable impairments to support Dr. Sparks' purported limitations of the left hand, with an exam from 2010 stating that "[t]here is no evidence of sensory motor neuropathy of left hand including left median and left ulnar nerves." (*Id*. at 932.) However, other physician reports in the record from 2012-2014 have assessed Plaintiff's hands as swollen and/or tender, particularly the left hand. (AR 329, 333, 358, 366, 386, 391, 461, 464.) A report from January 2013 states that Plaintiff had "increasing pain" in his hands, and a report from January 2014 states that "pain or swelling" occurs in his fingers. (*Id*. at 458.)

Based on the above, the Court finds that the ALJ committed harmful legal error by failing to provide specific and legitimate reasons supported by substantial evidence for giving Dr. Sparks' opinions little weight.

**IV. Remedy**

Having determined that the ALJ erred, the Court must vacate the Commissioner's decision. The remaining issue for the Court is whether to remand this matter for an award of benefits or for further proceedings. Such a determination is within the Court's discretion. *Smolen*, 80 F.3d at 1292.

When determining the appropriate remedy, the Court follows the following analysis:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. *Id.* If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and "all essential factual issues have been resolved." *Treichler*, 775 F.3d at 1101. In conducting this review, the district court must consider whether there are "inconsistencies between [the claimant's] testimony and the medical evidence in the record," *id.* at 1105, or whether the government has pointed to evidence in the record "that the ALJ overlooked" and explained "how that evidence casts into serious doubt" the claimant's claim to be disabled, *Burrell*, 775 F.3d at 1141. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits. *Id.*
>
> If the district court does determine that the "record has been fully developed," *id.*, and there are no outstanding issues left to be resolved, the district court must next consider whether "the ALJ would be required to find the claimant disabled on remand" if the "improperly discredited evidence were credited as true." *Id.* (quoting *Garrison*, 759 F.3d at 1020).
>
> . . . .
>
> "a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." *Treichler*, 775 F.3d at 1106. "In particular, we may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act'" *Burrell*, 775 F.3d at 1141 (quoting *Garrison*, 759 F.3d at 1021); *see also Connett*, 340 F.3d at 874-76 (finding that a reviewing court retains discretion to remand for further proceedings even when the ALJ fails to "assert specific facts or reasons to reject [the claimant]'s testimony"). Only when all factual issues in the record have been resolved, overwhelming evidence establishes that the claimant is disabled, and the government

> points to no evidence to the contrary, have we held a district court abused its discretion in failing to remand for benefits. *See Garrison*, 759 F.3d at 1022.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

The Court finds that remand for further proceedings is appropriate here. Although the Court finds that the ALJ erred in rejecting Plaintiff's symptom testimony and in evaluating Dr. Sparks' opinions, the Court finds there are evidentiary conflicts in the record that the ALJ must address before awarding benefits. For example, Plaintiff testified his physical therapy stopped a month sooner than it was authorized for, because the physical therapist thought Plaintiff had made "sufficient progress." (AR 68.) However, records indicate Plaintiff had not yet met his goals for physical therapy as of January 2014. (*Id.* at 668-75.) Additionally, Plaintiff's psoriasis has been inactive on at least two occasions (*id.* 328, 333) and mild on other occasions. (*Id.* at 679.) However, records from January 2014 state Plaintiff's arthritis has been "occurring in a persistent pattern for years" and that "the course has been increasing." Further, a physician report from October 2012 states Plaintiff was "back to work on light duty" and that he "recently started a new job as a broker part-time," in addition to "going to school for his MBA." (*Id.* at 318.) However, Plaintiff testified at the hearing that he had not worked since May 2012 and that he finished school in May 2012 (*Id.* at 50, 55.) Thus, the Court finds remand for further proceedings is appropriate.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is vacated and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 10th day of July, 2017.

Honorable John Z. Boyle
United States Magistrate Judge